IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 93-7630
_____

WILLIE ALBERT SMITH,

                        Petitioner-Appellee,

v.

EDDIE LUCAS, Commissioner,
Mississippi Department of
Corrections, ET AL.,

                        Respondents-Appellants.

_____

Appeal from the United States District Court
for the Southern District of Mississippi
_____
(December 6, 1993)

Before POLITZ, Chief Judge, KING and SMITH, Circuit Judges.

KING, Circuit Judge:

    The Commissioner of the Mississippi Department of
Corrections (Respondent) appeals an order of the district court
granting a writ of habeas corpus in favor of the petitioner,
Willie Albert Smith, based upon the failure of the State of
Mississippi to comply with the district court's order of November
23, 1992.  In that order, the district court had declared that it
would grant a writ of habeas corpus "as to Smith's death
sentence" unless the State initiated certain proceedings within
six months to correct the constitutional infirmity in that
sentence.  When the deadline expired, the State had failed to

commence the required proceedings. The district court granted the writ, directing Smith's death sentence to be vacated and ordering the State to impose upon Smith a sentence of life imprisonment. On appeal from that order, the State contends, inter alia, that the district court exceeded its authority in requiring the State to resentence Smith to life imprisonment. We agree with the State that the district court was without the power to direct "that the State of Mississippi impose upon [Smith] a sentence of life imprisonment," and thus we modify the district court's order to excise the quoted language. We find no error in the other determinations of the district court and thus affirm the judgment of the district court as modified.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner Willie Albert Smith was tried for the murder of Shirley Roberts, a convenience store manager, in the Circuit Court of the First Judicial Circuit of Hinds County, Mississippi.[1] The prosecution introduced "awesome" circumstantial evidence of Smith's guilt, as conceded by Smith's own attorney, as well as the testimony of two "eyewitnesses," who claimed to have seen Smith forcing a woman into a red Pinto in the convenience store parking lot around the time of the victim's abduction. Smith v. Black, 904 F.2d 950, 957-58 (5th Cir. 1990) ("Smith I"). The jury convicted Smith of the murder of Shirley

---

[1] The lengthy factual and procedural history is set forth in Smith v. Black, 904 F.2d 950 (5th Cir. 1990). Only the facts pertinent to the instant appeal are recited in this opinion.

Roberts during the course of a robbery, a capital crime in Mississippi. Id. at 959.

During the sentencing phase[2], the prosecution introduced evidence of rape and of manual strangulation, and the jury found three aggravating circumstances: (i) that the murder was committed while Smith was engaged in the commission of robbery, (ii) that the murder was committed for pecuniary gain, and (iii) that the murder was "especially heinous, atrocious, or cruel." Id. The jury also found beyond reasonable doubt that the aggravating circumstances outweighed the mitigating circumstances. Id. Consequently, Smith was sentenced to death.

A. This Court's Mandate

Smith pursued several post-conviction remedies in the state court[3] before commencing a habeas proceeding in the District

---

[2] Following a capital murder conviction, the jury in the Mississippi system proceeds to the sentencing phase. For a convicted capital defendant to receive the death sentence, "the jury must find at least one of eight statutory aggravating factors, and it must determine that the aggravating factor or factors are not outweighed by the mitigating circumstances, if any." Stringer v. Black, ___ U.S. ___, 112 S. Ct. 1130, 1134 (1992) (citing Miss. Code Ann. § 99-19-101).

[3] After his motion for new trial was denied, Smith pursued an automatic direct appeal to the Mississippi Supreme Court, which affirmed both the conviction and sentence. Although it modified its opinion on rehearing, Smith v. State, 419 So. 2d 563 (Miss. 1982), that court continued to affirm the state district court's judgment. Smith then obtained new counsel and petitioned the United States Supreme Court for a writ of certiorari on the basis of ineffective assistance of counsel and unlawful seizure of evidence, but this petition was denied by the Supreme Court, see Smith v. Mississippi, 460 U.S. 1047 (1983). Smith subsequently filed a petition for writ of error coram nobis, which was denied by the Mississippi Supreme Court almost solely on the basis of procedural bars, and that court subsequently denied Smith's motion for rehearing. Smith v. State, 434 So. 2d

Court for the Southern District of Mississippi on August 1, 1983.
This court entered a stay of execution and a stay of proceedings
in the district court until Smith's state court remedies were
exhausted.  After Smith had exhausted his state remedies,[4] he
amended his habeas petition, arguing, <u>inter</u> <u>alia</u>, that
Mississippi's use of the "especially heinous" aggravating
circumstance in the jury's deliberations as to his death sentence
was unconstitutional.  The federal district court denied Smith's
habeas petition, as well as his motion to alter or amend the
judgment, <u>Smith v. Thigpen</u>, 689 F. Supp. 644 (S.D. Miss. 1988),
and this court affirmed.  <u>Smith I</u>, 904 F.2d at 988.  With respect
to the "especially heinous" aggravating circumstance, this court
noted that the Supreme Court had recently held the factor to be
unconstitutional in a context similar to the one presented in
<u>Maynard v. Cartwright</u>, 486 U.S. 356 (1988).  In <u>Maynard</u>, the
Supreme Court invalidated an "indistinguishable" Oklahoma

---

212 (1983).

[4] Smith then filed an application for writ of error coram
nobis in the Mississippi Supreme Court on the basis that the two
"eyewitnesses" had perjured themselves at trial.  The Mississippi
Supreme Court ordered an evidentiary hearing in the circuit court
on the issue, <u>In re Smith</u>, 457 So. 2d 911 (Miss. 1984), but that
court denied relief, and the Mississippi Supreme Court affirmed
the denial of relief.  <u>Smith v. State</u>, 492 So. 2d 260 (Miss.
1986).

While the second state post-conviction action was pending,
Smith filed a third post-conviction motion in state court seeking
collateral relief on the basis that the prosecutor had
unconstitutionally excluded blacks from the jury and had failed
to disclose certain evidence.  This motion was also denied by the
Mississippi Supreme Court, as well as Smith's motion for
rehearing.  <u>Smith v. State</u>, 500 So. 2d 973 (Miss. 1986).

4

statute, finding that the term "especially heinous, atrocious or cruel" when used to define an aggravating factor for purposes of capital sentencing was unconstitutionally vague absent an appropriate limiting instruction. Id. at 363-64. In a related decision styled Clemons v. Mississippi, the Court prohibited the automatic affirmance of a death sentence where at least one valid aggravating factor remained after another factor had been held to be impermissible in those states, like Mississippi, which weigh aggravating against mitigating factors for sentencing purposes. 494 U.S. 738, 752 (1990). Instead, the Court required either that the appellate court reweigh the aggravating and mitigating circumstances or find that the error of including the unconstitutional aggravating factor was harmless beyond a reasonable doubt. Id. at 750-52. Maynard and Clemons were both relevant to Smith's claim for relief since the sentencing jury in his case found the existence of two other valid aggravating factors. This court considered itself to be precluded from reaching the issue in the case presented, however, because Smith's conviction had become final in 1983, several years before the relevant Supreme Court decisions were rendered. Thus, it determined that Smith could not take advantage of the "new rules"[5] announced in Maynard and Clemons. See Smith I, 904 F.2d at 986.

---

[5] See, e.g., Teague v. Lane, 489 U.S. 288 (1989) (prohibiting the retroactive application of "new rules" of constitutional procedure except in specific, limited situations which are not applicable in the case at bar).

Before the decision in Smith I was announced, Smith filed a fourth petition for post-conviction relief in the Mississippi Supreme Court on July 27, 1990, requesting that court to vacate or set aside his death sentence on the basis of Maynard and Clemons. The State responded on November 21, 1990, raising various procedural bars to the determination of the Maynard and Clemons claim and arguing that, even if the merits were reached, the Mississippi Supreme Court itself could reweigh or perform a harmless error examination without remanding for a new sentencing proceeding. Smith's application is still pending before the Mississippi Supreme Court.

Subsequently, the Supreme Court vacated the judgment rendered by this court in Smith I and remanded for further consideration in light of its contemporaneous decision in Stringer v. Black, ___ U.S. ___, 112 S. Ct. 1130 (1992). See Smith v. Black, ___ U.S. ___, 112 S. Ct. 1463 (1992) ("Smith II"). Stringer involved an almost identical fact-setting in that the death sentence of the petitioner in that case had also become final prior to Maynard and Clemons. 112 S. Ct. at 1134-35. The Court concluded that "the precedents even before Maynard and Clemons yield[ed] a well-settled principle," and thus, the decisions in tandem did not constitute a "new rule" for purposes of Teague. Id. at 1140.

On remand of Smith II, and in accordance with the Supreme Court's directive, this court applied the rules of Maynard and Clemons and determined that the use of the "especially heinous"

6

aggravating circumstance without a limiting instruction rendered Smith's death sentence constitutionally infirm -- specifically holding that the claim had not been procedurally defaulted. Smith v. Black, 970 F.2d 1383, 1388 (5th Cir. 1992) ("Smith III").  However, this court permitted the death sentence in Smith's case to

> be salvaged if the state appellate court eliminated the invalid aggravating factor and reweighed the remaining valid factors against the mitigating factors, or if it determined that the use of the invalid factor was harmless beyond a reasonable doubt. . . .  Should the State elect to initiate further proceedings in the Mississippi Supreme Court, that court still has the option of reweighing or performing a harmless error analysis as those procedures have been defined in Clemons and Wiley [v. Puckett, 969 F.2d 86 (5th Cir. 1992)].

Id.  Accordingly, we directed the district court "to issue the writ of habeas corpus unless the State of Mississippi initiates appropriate proceedings in state court within a reasonable time after the issuance of our mandate."  Id. at 1389.

**B.  District Court Action on Remand**

On remand from this court, the district court issued an order in pertinent part as follows:

> IT IS HEREBY ORDERED that the Court shall issue a writ of habeas corpus as to the Petitioner Willie Albert Smith's death sentence unless the State of Mississippi initiates proceedings to have the state court reweigh any aggravating and mitigating circumstances or conduct a harmless error analysis . . . by no later than May 23, 1993.

Ordered entered November 23, 1992 (the "November 23 Order"). This order gave the State six months to take appropriate action as defined therein.

7

After the time-period had expired and the State had failed to take the requisite action, Smith moved for entry of the writ of habeas corpus.  The State opposed the writ, claiming that it had not received notice of the November 23 Order.  Consequently, it argued, the State was unaware of the deadline until after its expiration.  Alternatively, the State argued that it had complied with the spirit of the district court's order since proceedings were pending before the Mississippi Supreme Court -- proceedings initiated by Smith more than two years before the November 23 Order -- to resolve the same issues contemplated in the November 23 Order.

The district court held that the State had received adequate notice and that the pendency of **Smith's** two-year-old application before the Mississippi Supreme Court was not sufficient to constitute an initiation by the **State** of proceedings "to reweigh any aggravating and mitigation circumstances or conduct a harmless error analysis" as required by the November 23 Order.  Consequently, the lower court entered an order directing the clerk of court to issue a writ of habeas corpus "directing [Smith's] sentence of death to be vacated, and that the State of Mississippi impose upon [Smith] a sentence of life imprisonment."  Order, entered July 9, 1993 (the "July 9 Order").  A writ of habeas corpus was issued in accordance with the July 9 Order.

The State then moved, pursuant to Federal Rule of Civil Procedure 59, to alter or amend the order granting the writ, asserting the same grounds as before, and adding a claim that the

8

July 9 Order exceeded the district court's authority.  The State claimed that the writ amounted to impermissible revision of the state court's sentence.  The State argued that, even if the district court had the authority to vacate the death sentence, the court exceeded its authority in requiring Mississippi to resentence Smith to life imprisonment.  This motion was denied by the district court, and a notice of appeal was immediately filed by the State.

The State additionally sought a stay of the order granting the writ pending its appeal, which motion was denied by the district court.  This court granted a stay and ordered an expedited briefing schedule and oral argument.

## II. ANALYSIS OF ARGUMENTS AND AUTHORITIES

The State requests a reversal of the district court's order granting the habeas writ, upon the following bases:  (i) the proceedings currently pending before the Mississippi Supreme Court were sufficient to comply with the mandate, and thus, the lower court had no basis to issue the writ; and (ii) the district court exceeded its authority in directing the Mississippi state courts to commute Smith's sentence to life imprisonment.[6]

---

[6] In its motion to stay the order granting the writ, the State had also complained that the district court improperly determined that the State had received notice of the November 23 Order.  The district court noted several circumstances in support of this finding, including the facts that:  (i) the docket sheet reflected proper service of the order upon the State, and (ii) the November 23 Order was referred to numerous times in a similar proceeding at which the State's same attorney was present.  Moreover, the State was forewarned of the district court's order when it received this court's August 20, 1992, opinion in Smith III mandating that result.  Consequently, and presumably because

9

Smith responds that the state court proceeding which he initiated did not suffice to show compliance by the State with the November 23 Order, especially where the State had filed a response arguing for the application of various procedural bars, which, if decided against Smith, would preclude the Mississippi court from even reaching the constitutional reweighing or harmless error analysis ordered to be performed by this court. Moreover, Smith contends, the State's failure either to withdraw or amend its response to reflect the ruling of this court negates any claim of compliance. With respect to the extent of the district court's authority, Smith advocates an estoppel-type analysis, claiming that the writ may be used to preclude the State from resentencing Smith to death.

**A.   Sufficiency of the State Court Proceedings**

The State's first argument for reversing the district court involves its claimed prior compliance with the November 23 Order. The district court, however, held that the fortuitous circumstance that Smith had previously filed a petition with the Mississippi Supreme Court addressed to the issues raised in the November 23 Order did not amount to compliance by the State with the order. Consequently, the district court dismissed this argument as being "without merit," but did not make specific findings in this regard. The district court's finding that the

---

of the deference which this court must accord to part of the district court's finding in this regard under the clearly erroneous standard, the State has relegated this "lack of notice" argument to a footnote in its appellate brief.

10

proceedings before the Mississippi Supreme Court were insufficient to comply with the November 23 Order is a legal conclusion, reviewed de novo. Halferty v. Pulse Drug Co., Inc., 864 F.2d 1185, 1188 (5th Cir. 1989). The decision is correct. This court directed the State (through the district court) to remedy the constitutional problem identified, and the State's failure to take steps in a Mississippi court to do so clearly does not comply with our mandate or the district court's order.

Even if we were to concede arguendo that the State could avail itself of Smith's fourth post-conviction filing in the Mississippi Supreme Court -- a difficult concession in view of the requirement of exact compliance with our mandate[7] -- the State's failure to amend its response already on file with the Mississippi Supreme Court to reflect this court's mandate and the district court's order falls short of compliance. As Smith points out, the State's response to his fourth Mississippi petition includes a "myriad of threshold issues," which were raised by the State in opposition to the petition and, significantly, were never withdrawn by the State in response to the District Court's November 23 Order.[8] If these "threshold"

---

[7] See, e.g., Gegenheimer v. Galan, 920 F.2d 307 (5th Cir. 1991) (On remand, the district court must comply with the mandate of the court of appeals and may not revisit any issues that the appellate court expressly or impliedly disposed of in its decision.); Newball v. Offshore Logistics, Int'l, 803 F.2d 821 (5th Cir. 1986) (The appellate mandate controls on all matters within its scope.).

[8] For example, the State has raised in its response at least two procedural bars, either of which could prevent the Mississippi court from ever reaching the constitutionally

11

issues were resolved against Smith, they would prevent the Mississippi Supreme Court from considering the pertinent issues on the merits.  The State's failure to withdraw or excise these arguments from its response before the Mississippi Supreme Court creates problems for the relief Smith requested that literal compliance by the State with this court's mandate and the district court's order would have obviated.  <u>See, e.g.</u>, <u>Wiley v. State</u>, No. 03-DP-0057, 1993 WL 39685 at *3 (Miss. October 7, 1993) ("As this case has been returned to our Court pursuant to orders of the Fifth Circuit Court of Appeals and the United States District Court, no procedural bar may be applied. Therefore, Wiley's claim is viable.").

Moreover, the <u>Maynard</u>-<u>Clemons</u>-<u>Stringer</u> trilogy produced several cases in a procedural posture identical to this case. <u>E.g.</u>, <u>Wilcher v. State</u>, No. 03-DP-0032 & 03-DP-0037, 1993 WL 398680 (Miss. October 7, 1993); <u>Wiley</u>, 1993 WL 39685 at * 2-3. In those cases, the State affirmatively filed pleadings in the

_____

defective jury instructions -- contrary to this court's mandate. In its pleadings currently on file before the Mississippi Supreme Court, the State argues that:

    (i)  Smith's challenge to the "especially heinous" sentencing factor was previously adjudicated by the Mississippi Supreme Court in his initial application for collateral relief; accordingly, Smith was barred under the Mississippi doctrine of successive petitions from raising the claim, Miss. Code Ann. § 99-39-27(9); and

    (ii)  Smith's failure to raise the constitutional error at trial or on direct appeal operates as a waiver of the claim which is <u>res</u> <u>judicata</u> in subsequent proceedings under Miss. Code Ann. § 99-39-21.

state supreme court in response to virtually identical, conditional habeas mandates from this court -- evidencing that the State itself recognized the proper response to such an order. In Wilcher, to review but one example, the case was decided by the Mississippi Supreme Court and was remanded for a new sentencing hearing within nine and one-half months after the issuance of our mandate.  In this case, by contrast, Smith has continued on death row for fifteen months after the issuance of our mandate, under a constitutionally infirm sentence, and the State has done absolutely nothing to remedy that situation.  It is difficult to understand how the State can even argue that it has complied with our mandate or the district court's order.  For all of these reasons, we hold that the district court committed no reversible error in finding the Mississippi proceedings to be inadequate.

## B.  The Legal Effect of the Fifth Circuit Mandate Upon the District Court

Although the State and Smith focus their arguments upon the extent of the district court's authority under federal law to issue the disputed writ (as discussed infra), neither party addresses the fact that the district court's July 9 Order exceeded this court's mandate.[9]  The attempt of the district

_____

[9] As noted above, this court ordered the district court:

> to issue the writ of habeas corpus unless the State of Mississippi initiates appropriate proceedings in state court within a reasonable time after the issuance of our mandate.

13

court to require the Mississippi courts to resentence Smith to life imprisonment was not prescribed in this court's mandate. As discussed below, we doubt that the district court had the authority under federal law to order the Mississippi trial court to sentence Smith to life imprisonment. But even if the district court theoretically possessed such power, the district court was bound by our mandate, and the July 9 Order must be modified to conform to that mandate.[10]

## C. Extent of a Federal Court's Authority to Enter a Writ of Habeas Corpus

The State also claims that the district court was without the power to use the writ to compel a state court to modify its sentence, citing to Duhamel v. Collins, 955 F.2d 962 (5th Cir. 1992), in support of this contention.[11] In Duhamel, this court vacated a similar order from the District Court for the Southern District of Texas which attempted to commute a death sentence into life imprisonment, holding that this action was beyond the

---

Smith III, 970 F.2d at 1389. The July 9 Order deviated from our mandate as follows:

> IT IS THEREFORE ORDERED AND ADJUDGED that . . . the said writ [of habeas corpus] shall issue forthwith from the Clerk of this Court directing the Petitioner's sentence of death to be vacated, **and that the State of Mississippi impose upon Petitioner a sentence of life**.

July 9 Order (emphasis added).

[10] See supra note 7.

[11] As a preliminary matter, we note that the district court's conclusions about the extent of its authority in issuing the writ under both our mandate and federal law are also issues of law reviewable de novo by this court. Halferty v. Pulse Drug Co., Inc., 864 F.2d 1185, 1188 (5th Cir. 1989).

14

authority of a federal court.  955 F.2d at 968.  The State also cites to <u>Fay v. Noia</u>, 372 U.S. 391, 430-431 (1963) -- quoted in <u>Duhamel</u> -- for the proposition that a federal court "cannot revise the state court judgment; it can only act on the body of the petitioner."

Smith responds that our opinion in <u>Welch v. Beto</u>, 355 F.2d 1016, 1020 (5th Cir.), <u>cert. denied</u>, 385 U.S. 839 (1966), and the district court's opinion in <u>Jones v. Smith</u>, 685 F. Supp. 604 (S.D. Miss. 1988), control this outcome and that a federal court may use the habeas writ to prohibit the State permanently from executing a prisoner.  In <u>Welch</u>, this court, upon finding a violation of the petitioner's federal rights, remanded the case and ordered the district court to take such action as necessary to allow the state an "opportunity" to accord the petitioner a post-conviction hearing in accordance with the opinion within "a reasonable time."  355 F.2d at 1020.  This court further mandated that "[i]n default thereof, the petitioner shall not be executed."  <u>Id.</u>  In <u>Jones</u>, another judge in the Southern District of Mississippi issued an order virtually identical to the one issued in the instant case.  <u>See</u> 685 F. Supp. at 606-07.  The <u>Jones</u> court relied upon a line of authority allowing a federal court to employ its "broad discretionary powers to grant various forms of equitable relief (without which it is obvious that similar orders would be issued in vain)."  <u>Id.</u> at 606.  On the basis of the foregoing authorities, Smith concludes that it is appropriate for a federal court to use its habeas powers to

15

impose conditionally "[a] prohibition against the re-imposition of the death penalty" unless the State avails itself of the opportunity to correct the constitutional error.

We agree with the State that the district court did not have the authority under federal law to compel Mississippi to "impose upon [Smith] a sentence of life imprisonment." In Fay v. Noia, the Supreme Court recounted the historical use of the writ of habeas corpus and the federal reluctance to extend the writ to interfere with state court proceedings. 372 U.S. 403.[12] The Court recognized that the "root principle" of the habeas writ is "that in a civilized society, government must always be accountable to the judiciary for a man's imprisonment: if the **imprisonment** cannot be shown to conform with the fundamental requirements of law, the individual is entitled to his immediate **release**." 372 U.S. at 402 (emphasis added). Thus, the focus of the writ is an inquiry "into the legality of the prisoner's detention." Id. at 418.[13]

_____

[12] Fay v. Noia was recently overruled on other grounds. See Coleman v. Thompson, ___ U.S. ___, 111 S. Ct. 2546 (1991) (specifically rejecting the "deliberate bypass" approach used in Fay v. Noia for determining whether an issue that has been procedurally defaulted in the state courts may be reached on federal collateral review).

[13] As the Court instructed:

[T]he writ of habeas corpus is a new suit brought by a petitioner to enforce a **civil right**, which he claims as against those who are holding him in custody. The proceeding is one instituted by himself **for his liberty**, and not by the government to punish for his crime. The judicial proceeding under it is not **to inquire** into the criminal act which is complained of, but **into the right to liberty** notwithstanding the act.

16

We have found no indication that the Supreme Court has somehow changed its position and extended the use of habeas corpus in the context presented -- i.e., to revise a state criminal defendant's sentence without requiring his release.  It would thus appear that the writ has but one remedy -- to direct the liberation of a state prisoner whose confinement violates federal law.  "Habeas lies to enforce the right of personal liberty; when that right is denied and a person confined, the federal court has the power to release him.  Indeed, it has no other power . . . ."  Fay v. Noia, 372 U.S. at 430-31.  It would be a serious departure from prior precedent to hold that the writ can vacate the defective sentence only to allow the federal court to resentence the state defendant on its own accord.

The Supreme Court has recognized the conditional use of the writ to require constitutional compliance.  See, e.g., Richmond v. Lewis, ___ U.S. ___, 113 S. Ct. 528, 537 (1992).  In Richmond, the Court issued the following mandate:

> We reverse the judgment of the Court of Appeals and remand with instructions to return the case to the District Court to enter an order granting the petition for a writ of habeas corpus unless the State of Arizona within a reasonable period of time either corrects the constitutional error in petitioner's death sentence or vacates the sentence and imposes a lesser sentence consistent with law.

Id. As with our mandate in the instant case, the Court's direction to the district court is to grant the writ unless the

---

Fay v. Noia, 372 U.S. at 423 n.34 (quoting 1 BAILEY, HABEAS CORPUS AND SPECIAL REMEDIES § 4 (1913)) (emphasis added).

State takes action to remedy the infirmity in the death sentence.[14] See, e.g., Smith, 970 F.2d at 1389; Wiley v. Puckett, 969 F.2d 86, 94, 106 (5th Cir. 1992). However, the conditional issuance of a habeas writ is decidedly different from a "conditional resentencing," such as in Jones or the instant case.[15] In the conditional writ cases, the federal court has determined that it has the authority to order immediate release of the prisoner as a result of the federal law violation; the court chooses, however, to delay the writ to allow the state to correct the problem as best it can. Although the federal court, in doing so, may certainly suggest a corrective procedure in broad terms, the real thrust of the order is to alert the state court to the constitutional problem and notify it that the

_____

[14] It is notable that the Richmond case also involved an infirmity in the sentence alone, yet the Court mandated the issuance of the writ for release of the prisoner unless the error in sentencing were corrected by the state. See Richmond v. Lewis, ___ U.S. ___, 113 S. Ct. 528, 537 (1992).

[15] In Jones v. Smith, 685 F. Supp. 604, 606 (S.D. Miss. 1988), the federal district court vacated the petitioner's death sentence and conditionally granted a writ of habeas corpus "thereby resulting in the imposition of a life sentence under Mississippi Law" unless the state resentenced the petitioner within thirty days. In a curious footnote, the federal district court in Jones v. Smith implied that this court might sanction such an approach, citing to our opinion in Jones v. Thigpen, 741 F.2d 805, 816 (5th Cir. 1984), in which we affirmed the district court's order vacating a state petitioner's defective sentence and determined that the state was precluded on Double Jeopardy grounds from holding another sentencing hearing in which it could seek the death penalty. See Jones v. Smith, 685 F. Supp. at 606 n.3. As the district court acknowledges, however, this court's holding in Jones v. Thigpen, was implicitly overruled by the Supreme Court in Thigpen v. Jones, 475 U.S. 1003 (1986), and Cabana v. Bullock, 474 U.S. 376, 392 (1986). In light of this precedent, the holding in Jones that habeas may be used to effect a conditional resentencing does not rest on solid ground.

18

infirmity must be remedied.  By contrast, a "conditional resentencing" -- in which the federal court threatens to alter the state court's sentence or impose its own sentence if the State fails to take action -- crosses the line into impermissible interference with the state court's autonomy in applying its own criminal procedures.  See Dixon v. Beto, 472 F.2d 598, 599 (5th Cir. 1973) ("The federal courts are not empowered to order the state courts to make remedies available nor are they authorized to dictate the type of hearing which is to be conducted by the state courts.").  Thus, both Richmond and our directive in Smith are consistent with the analysis in Fay v. Noia.

Smith's interpretation of Welch, however, does not comport with Fay v. Noia or with this court's opinion in Duhamel.  Smith understands Welch to allow a federal court indirectly to commute a death sentence into life imprisonment by prohibiting execution of the death sentence.  Thus, he concludes, it is proper for a federal court to grant habeas relief to a state defendant sentenced to death in the form of a life sentence.  As noted previously, in Welch, this court ordered relief in a habeas proceeding conditioned upon the state's affording the petitioner an appropriate post-conviction proceeding.  This court further mandated that "[i]n default thereof, the petitioner shall not be executed."  355 F.2d at 1020.

Smith misreads our opinion in Welch.  In that case, we held only that the state's default in compliance with our mandate would result in its inability to execute upon the defective

19

sentence. Nothing in our opinion in that case can be read to have precluded the state from subsequently seeking a constitutionally valid death sentence.

In summary, we find that the portion of the July 9 Order directing Smith to be resentenced to life imprisonment amounts to an impermissible alteration of Smith's sentence.

## V.   CONCLUSION

The district court's July 9 direction to the Mississippi courts to "impose upon [Smith] a sentence of life imprisonment" did not comply either with our mandate in Smith III or with federal law. There is no authority for a holding that the writ of habeas corpus may be employed to revise Smith's constitutionally infirm sentence in this manner. Our mandate in Smith III stated that the writ would be issued upon the State's failure to take the requisite action during the defined period. The directive from this court allowed but one consequence if the State failed to comply with the November 23 Order -- to issue the writ for Smith's immediate and unconditional release from his unconstitutional sentence.[16] Consequently, this court must modify the order of the district court to conform to our mandate

_____

[16] At oral argument, the Respondent contended for the first time that the State would be able to continue to hold Smith under Mississippi law pending resentencing even if the district court's decision to vacate Smith's death sentence were to be affirmed. We express no opinion on that contention, as we do not address unbriefed arguments raised for the first time at oral argument. Najarro v. First Fed. Sav. & Loan Ass'n of Nacogdoches, 918 F.2d 513, 516 (5th Cir. 1990) ("In the absence of manifest injustice, this court will not consider arguments belatedly raised after appellees have filed their brief.").

20

by excising the portion of the order resentencing Smith to life imprisonment.

The July 9 Order of the district court is modified to delete the words "and that the State of Mississippi impose upon the Petitioner a sentence of life imprisonment" from its decree. The writ of habeas corpus issued as a result of the July 9 Order is similarly amended. As modified, the judgment of the district court is affirmed.

AFFIRMED as MODIFIED.