Calvin Jerold BURDINE, Petitioner,

v.

Gary JOHNSON, Director, Texas Department of Criminal Justice, Institutional Division, Respondent.

No. Civ.A. H–94–4190.

United States District Court,
S.D. Texas,
Houston Division.

March 1, 2000.

Robert L. McGlasson, Attorney at Law, Decatur, GA, Mandy Jo Welch, Burr & Welch, Houston, TX, for petitioner.

John Cornyn, Attorney General of Texas, Gena Blount Bunn, Assistant Attorney General and Chief, Capital Litigation Division, Douglas Alan Danzeiser, Assistant Attorney General, Office of the Texas Attorney General, Austin, TX, for respondents.

## ORDER

HITTNER, District Judge.

Pending before the Court are the Motion for Stay of Judgment Pending Appeal and Motion for Leave to File Untimely Motion for Stay of Judgment Pending Appeal and Alternative Motion for Relief from Judgment filed by respondent Gary Johnson ("Johnson" or "the State"), and the Motion for Immediate Release from Custody filed by petitioner Calvin Jerold Burdine ("Burdine"). Having considered

the motions, the submissions, arguments of counsel, the record and the applicable law, the Court determines that the State's motions should be DENIED and Burdine's motion should be GRANTED IN PART AND DENIED IN PART.

### BACKGROUND

This is a capital habeas corpus proceeding in which petitioner Burdine sought relief on a variety of grounds relating to the constitutionality of his murder conviction and sentence of death. Burdine was convicted in Texas state district court in Houston for the death of his former housemate and companion, W.T. "Dub" Wise ("Wise"). Wise was killed on April 17, 1983, during the course of a robbery committed by Burdine and another, Douglas McCreight.[1] On direct appeal, Burdine's conviction was affirmed by the Texas Court of Criminal Appeals. *See Burdine v. Texas*, 719 S.W.2d 309 (Tex.Crim.App. 1986), *cert. denied*, 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d 779 (1987).

Burdine subsequently applied for a writ of habeas corpus in state court. Burdine's first application was denied. Following an evidentiary hearing on the second application, the state trial court determined that the great weight and preponderance of the evidence supported Burdine's contention that his court-appointed attorney, Joe Cannon ("Cannon"), "repeatedly dozed and/or actually slept during substantial portions of [Burdine's] capital murder trial."[2] *Ex Parte Burdine*, Cause No. 37944–B (183rd Dist.Ct. Harris County, Texas, April 3, 1995). The trial court therefore recommended that habeas relief be granted. *See id.*

The Texas Court of Criminal Appeals agreed that "the trial court's findings of fact are supported by the record." *Ex Parte Burdine*, Writ No. 16,725–06 (Tex. Crim.App. April 6, 1995). However, over the dissent of three judges, the court held in a one-page, unsigned opinion that Burdine was "not entitled to relief because he failed to discharge his burden of proof under *Strickland v. Washington*, [466] U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)." *Id.*

Burdine then sought habeas relief in federal court under 28 U.S.C. § 2254. On September 29, 1999, this Court granted Burdine's application, holding, *inter alia*, that "[a] sleeping counsel is equivalent to no counsel at all." *Burdine v. Johnson*, 66 F.Supp.2d 854, 866 (S.D.Tex.1999) (referred to hereinafter as "the Order"). The Court specifically decreed: "[I]t is ORDERED that the State of Texas SHALL EITHER RETRY OR RELEASE Burdine within 120 days of the date of the entry of this order." *Id.* at 867.

The State timely perfected an appeal from the Order to the United States Court of Appeals for the Fifth Circuit. This action, however, did not automatically stay the Order or relieve the State of its obligation to comply with the Order. *See* Fed.R.App.P. 8 & 23; *United States ex rel. Barnwell v. Rundle*, 461 F.2d 768 (3d Cir. 1972). Nor did the State seek a stay of the Order within the 120–day period pursuant to Federal Rule of Appellate Procedure 8 and Federal Rule of Civil Procedure 62. Absent such a stay from either the district court or the court of appeals, the State was required to comply with the Order by either retrying Burdine, or releasing him from prison, within 120 days.

The 120–day window for complying with the Order expired on January 27, 2000.

---

**1.** The State did not prosecute McCreight for capital murder, despite evidence indicating that McCreight was the primary actor. Pursuant to a plea agreement, McCreight served an eight year prison sentence and was subsequently paroled.

**2.** Burdine also asserted several other grounds for habeas relief, including Cannon's references to his own client at trial as a "queer" and a "fairy," and Cannon's failure to object to the prosecution's argument at sentencing that Burdine should be sentenced to death because "sending a homosexual to the penitentiary certainly isn't a very bad punishment for a homosexual."

The State did not initiate new trial proceedings, and did not release Burdine, within the prescribed period. The State finally requested a stay of the Order on February 10, 2000. On February 11, 2000, the Court ordered the Office of the Texas Attorney General to show cause why it should not be held in contempt for violating the Court's September 29, 1999 order. The State was further ordered to show cause why Burdine should not immediately be released from custody. A hearing was held on February 14, 2000 with all counsel of record present.

In this case of first impression in the Fifth Circuit, this Court must now decide the ramifications of the State's failure to comply with the Order. The State urges the Court to refrain from imposing sanctions for contempt. The State further requests that the Court grant the State's untimely motion to stay the September 29, 1999 order, or invoke Federal Rule of Civil Procedure 60(b), which allows the Court, under certain circumstances, to excuse a party's "mistake" or "neglect" and relieve it from the obligations imposed by an order. Burdine responds that the State should be held accountable for its noncompliance with the Order, and asks the Court to order his immediate and unconditional release.

*ANALYSIS*

■ Initially, the Court takes note of its inherent authority to hold the State in contempt for its noncompliance with the September 29, 1999 order. "The power to punish for contempt is inherent in all courts; its existence is essential to the preservation of order in judicial proceedings, and to the enforcement of the judgments, orders and writs of the courts and, consequently, to the due administration of justice." *Chilcutt v. United States,* 4 F.3d 1313, 1327 n. 38 (5th Cir.1993) (quoting *Ex parte Robinson,* 86 U.S. (19 Wall.) 505, 22 L.Ed. 205 (1873)), *cert. denied sub nom. Means v. Wortham,* 513 U.S. 979, 115 S.Ct. 460, 130 L.Ed.2d 367 (1994). "A party commits contempt when he violates a definite and specific order of the court

requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *Piggly Wiggly Clarksville, Inc. v. Mrs. Baird's Bakeries,* 177 F.3d 380, 382 (5th Cir.1999). Here, the State concedes that it violated the September 29, 1999 order.

■ A federal court may elect to address a violation of its order as civil contempt, criminal contempt, or both. *See United States v. Hilburn,* 625 F.2d 1177, 1179 (5th Cir.1980). In general, whether a contempt is civil or criminal turns on the character and purpose of the sanction imposed. *International Union, United Mine Workers v. Bagwell,* 512 U.S. 821, 827–28, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994). The Supreme Court has explained that "a contempt sanction is considered civil if it is remedial, and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court." *Id.*

■ In a civil contempt proceeding, the contemnor's good faith, or the fact that the violation was unintentional, is not a defense. *McComb v. Jacksonville Paper Co.,* 336 U.S. 187, 191, 69 S.Ct. 497, 93 L.Ed. 599 (1949); *see also Waffenschmidt v. MacKay,* 763 F.2d 711, 726 (5th Cir. 1985), *cert. denied,* 474 U.S. 1056, 106 S.Ct. 794, 88 L.Ed.2d 771 (1986). This is because civil contempt sanctions are not imposed to punish the contemnor, but rather to compel compliance with a court order or "compensate a party who has suffered unnecessary injuries or costs because of contemptuous conduct." *Travelhost, Inc. v. Blandford,* 68 F.3d 958, 961–62 (5th Cir. 1995). The sanctions "are to be adapted to the particular circumstances of each case." *N.L.R.B. v. Trailways, Inc.,* 729 F.2d 1013, 1023 (5th Cir.1984); *see generally* 11A Charles A. Wright, Arthur R. Miller, Mary Kay Kane, Federal Practice and Procedure § 2960 (1995).

Burdine asks this Court to fashion a contempt sanction that will remedy the harm caused by the State's failure to com-

ply with the Order of this Court. Burdine has suggested several contempt penalties, including an order requiring the State to release Burdine from custody immediately and permanently, without the possibility of a retrial on the underlying charge.

The State urges the Court to deny all such relief. The essence of the State's argument is that the Court should decline to hold the State accountable for the mistakes of its attorneys. Instead, the State argues, the Court should relieve the State from the consequences of those mistakes by granting the State's untimely motion to stay the Order or granting it relief from the Order pursuant to Federal Rule of Civil Procedure 60(b). However, the State's argument fails to address the specific conditional language of this Court's Order or the nature and purpose of the writ of habeas corpus.

"[I]n a civilized society, government must always be accountable to the judiciary for a man's imprisonment: if the imprisonment cannot be shown to conform with the fundamental requirements of law, the individual is entitled to his immediate release." *Fay v. Noia,* 372 U.S. 391, 402, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), *overruled on other grounds by Coleman v. Thompson,* 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Smith v. Lucas,* 9 F.3d 359, 366 (5th Cir.1993). This fundamental canon of a free society has long been embodied in the writ of habeas corpus, "the most celebrated writ in the English law." 3 Blackstone Commentaries 129, *quoted in Fay,* 372 U.S. at 400, 83 S.Ct. 822. The writ is "antecedent to statute, and throwing its root deep into the genius of our common law.... It is perhaps the most important writ known to the constitutional law of England, affording as it does a swift and imperative remedy in

all cases of illegal restraint and confinement." *Secretary of State for Home Affairs v. O'Brien,* App.Cas. 603, 609 (H.L. 1923), *quoted in Fay,* 372 U.S. at 400, 83 S.Ct. 822. For these very reasons, the writ has been memorialized in the United States Constitution,[3] included in Congress's first express grant of jurisdiction to the federal judiciary,[4] and confirmed early in our jurisprudence by Chief Justice John Marshall.[5] *Fay,* 372 U.S. at 400, 83 S.Ct. 822. Indeed, there is "no higher duty than to maintain [the writ] unimpaired." *Bowen v. Johnston,* 306 U.S. 19, 26, 59 S.Ct. 442, 83 L.Ed. 455 (1939), *quoted in Fay,* 372 U.S. at 400, 83 S.Ct. 822.

"[T]he focus of the writ is an inquiry 'into the legality of the prisoner's detention.'" *Fay,* 372 U.S. at 418, 83 S.Ct. 822 *quoted in Smith,* 9 F.3d at 366. "Habeas lies to enforce the right of personal liberty; when that right is denied and a person confined, the federal court has the power to release him. Indeed, it has no other power...." *Fay,* 372 U.S. at 430–31, 83 S.Ct. 822 *quoted in Smith,* 9 F.3d at 366. Accordingly, a federal court is limited to a single remedy if the writ of habeas corpus issues: "to direct the liberation of a state prisoner whose confinement violates federal law." *Smith,* 9 F.3d at 366.

In many cases, however, instead of issuing the writ immediately, federal courts have issued so-called "conditional orders" or "conditional writs" of habeas corpus to afford the state an opportunity to correct the constitutional infirmity of the prisoner's confinement. *See, e.g., Richmond v. Lewis,* 506 U.S. 40, 113 S.Ct. 528, 121 L.Ed.2d 411 (1992); *Smith,* 9 F.3d at 366–67; *Moore v. Zant,* 972 F.2d 318, 320 (11th Cir.1992); *Wiley v. Puckett,* 969 F.2d 86, 94, 106 (5th Cir.1992). By issuing a condi-

---

**3.** "The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. art. I, § 9, cl. 2.

**4.** Judiciary Act of September 24, 1789, c. 20, § 14, 1 Stat. 81–82.

**5.** The Chief Justice heralded the writ as a "great constitutional privilege." *Ex parte Bollman and Swartwout,* 8 U.S. (4 Cranch) 75, 95, 2 L.Ed. 554 (1807).

tional writ, the federal court has already determined that a state prisoner is being held in violation of federal law and that the court has authority to command the prisoner's immediate release. *Smith*, 9 F.3d at 366–67. The court chooses, however, to delay the issuance of the writ for a specified period of time to afford the state an opportunity to remedy the infirmity. *Id.; Hilton v. Braunskill*, 481 U.S. 770, 775, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987). The conditional nature of the writ provides the state with a finite window of time in which to correct the constitutional violation. Once corrected, the state prisoner is no longer confined in violation of federal law and habeas relief is therefore inappropriate.

"Conditional orders are essentially accommodations accorded to the state." *Phifer v. Warden*, 53 F.3d 859, 864–65 (7th Cir.1995). If the state chooses to timely act and correct the violation forming the basis of the issuance of the conditional writ, the writ will not issue. If, on the other hand, the state chooses not to act or timely obtain a stay, and fails to cure the error within the deadline established by the federal court in the conditional writ, the writ issues and the prisoner must be released. *See e.g. Phifer*, 53 F.3d at 865 ("Failure to cure that error, however, justifies the district court's release of the petitioner"); *Smith*, 9 F.3d at 366 ("the district court is to grant the writ unless the State takes action to remedy the infirmity in the death sentence"); *Hammontree v. Phelps*, 605 F.2d 1371, 1381 (5th Cir.1979) ("We suggest that the state be given a reasonable time, say ninety days, within which to retry the petitioner; otherwise, it must permanently discharge him from custody").

The framework of the conditional order implicitly requires a district court to assess the state's compliance with its mandate. *See Phifer*, 53 F.3d at 865. However, certain factual situations obviate the necessity of making such a finding—where, as in the instant case, a court orders a new trial or release and, absent a stay, the state fails to

provide either remedy. "In these cases, a specific assessment concerning compliance may be unnecessary—the writ will simply issue because it is apparent that the state has not fulfilled the mandate." *Id.*

In this case, the State of Texas had 120 days from September 29, 1999 to either retry or release Burdine. *Burdine*, 66 F.Supp.2d at 867. It is undisputed that the Texas Attorney General's Office failed to comply with this mandate. The State admitted at the show cause hearing conducted on February 14, 2000 that it had not acted within the 120 day window. If a stay had been sought and granted within the 120 days, the State would have been temporarily absolved of its duty to act pending resolution of its timely filed appeal, and the conditions triggering the issuance of the writ would have been suspended. The State, however, failed to act in a timely fashion, and cannot preclude the issuance of the writ because the window of opportunity afforded by the conditional order has passed.

The State argues that even if Burdine's release is mandated by the terms of the Order, the Court may grant temporary relief from the Order pursuant to Federal Rule of Civil Procedure 60(b). Rule 60(b) allows the Court, in certain circumstances, to excuse a party's "mistake" or "neglect" and relieve it from obligations imposed by an order. However, this Court cannot relieve the State from the Order while an appeal from the Order is pending before the Fifth Circuit. *See Travelers Ins. Co. v. Liljeberg Enterprises, Inc.*, 38 F.3d 1404, 1408 n. 3 (5th Cir.1994). This Court's authority to modify its original order is limited because the Fifth Circuit must be afforded an opportunity to address the Order as it was originally written. *See Winchester v. United States Attorney for the S. Dist. of Tex.*, 68 F.3d 947, 949 (5th Cir.1995). Any modification by this Court prior to the Fifth Circuit's decision would effectively deprive the appellate court of its right to review the Order, or at the minimum, allow for

inconsistent conclusions regarding that order. *Id.* (citing *In re Butler,* 2 F.3d 154, 157 (5th Cir.1993)). That is not to say, however, that this Court cannot *enforce* the Order as written. Absent a stay, a district court generally retains jurisdiction to enforce its prior orders. *Plaquemines Parish Commission Council et al. v. United States,* 416 F.2d 952, 954 (5th Cir.1969). The Court finds that in the instant case, it would be inappropriate to grant Rule 60(b) relief and prevent Burdine's release.

■ The Court therefore now turns to the release of Burdine. The terms of a prisoner's release, pending an appeal from a district court's order granting habeas corpus relief, are controlled by Federal Rule of Appellate Procedure 23. Rule 23 provides: "While a decision ordering the release of a prisoner is under review, the prisoner must—unless the court or judge rendering the decision, or the court of appeals, or the Supreme Court, or a judge or justice of either court orders otherwise—be released on personal recognizance, with or without surety." Pursuant to the rule, there is a presumption in favor of release. *See Braunskill,* 481 U.S. at 777, 107 S.Ct. 2113; *Rundle,* 461 F.2d at 770. The party opposing release must set forth "special reasons" for the modification of the release. *Foster v. Lockhart,* 9 F.3d 722, 727 (8th Cir.1993); *Workman v. Tate,* 958 F.2d 164, 166–67 (6th Cir.1992); *Rundle,* 461 F.2d at 770.

■ The State has not presented the Court with any facts that would militate against release in the instant case. Rather, the relevant facts show that Burdine has been incarcerated for over 16 years. The State has not made the Court aware of any incidents during that time that would suggest he is a danger to the community. In fact, the Court is only aware of one incident involving Burdine. In that incident, Burdine was the victim of an unprovoked and vicious attack by a fellow inmate which left him permanently disfigured and disabled. Moreover, Burdine suffers irreparable harm each day that he is imprisoned in violation of the United States Constitution. Remedying such harm is the very essence of the writ of habeas corpus.

■ Burdine argues that his release should be unconditional, and asks this Court to bar the State from retrying him. The federal district courts have the power to dispose of habeas corpus matters as "law and justice require." 28 U.S.C. § 2243; *Capps v. Sullivan,* 13 F.3d 350, 352 (10th Cir.1993). Section 2243 provides the courts with "the largest power to control and direct the form of judgment to be entered in cases brought ... on habeas corpus." *Braunskill,* 481 U.S. at 775, 107 S.Ct. 2113 (citations omitted), *quoted in Capps,* 13 F.3d at 352. Precluding the state from retrying a successful petitioner is a permissible remedy. *See, e.g., Capps,* 13 F.3d at 352; *Foster,* 9 F.3d at 727; *Burton v. Johnson,* 975 F.2d 690, 693 (10th Cir.1992). "Nevertheless, this is an extraordinary remedy that is suitable only in certain situations, such as when a retrial itself would violate the petitioner's constitutional rights." *Foster,* 9 F.3d at 727 (citation omitted). These circumstances are not present in the instant case.

■ In its September 29, 1999 order, this Court found that Burdine had received ineffective assistance of counsel due to his counsel sleeping for substantial portions of his capital murder trial. *Burdine,* 66 F.Supp.2d at 866. The Court therefore vacated Burdine's state murder conviction. As noted in the Court's mandate, the State could remedy the constitutional infirmity of Burdine's conviction by retrying him. A retrial would provide Burdine with an attorney who would remain awake throughout the trial and afford him his constitutionally required counsel. Thus, the retrial itself would not violate Burdine's constitutional rights, and the Court refuses to bar the State from retrying Burdine following his release. *See, e.g., Foster,* 9 F.3d at 727–28.

The effect of the writ's issuance is therefore Burdine's release from his unconstitu-

tional custody. *See, e.g., Foster,* 9 F.3d at 727. At the February 14, 2000 hearing, counsel expressed some question and concern regarding the alleged ambiguity of the Court's use of the term "release" in the conditional order. By "release," the Court means, and meant in its prior order, the obvious, common sense, everyday definition of the term.[6] The Court gave the State a reasonable opportunity (120 days) to correct the constitutional defect that makes Burdine's current custody unlawful, or to seek a stay. The State simply failed to act at all.

## CONCLUSION

 Based upon the facts in this case, the Court elects not to directly sanction the State for contempt, finding that the disregard of this Court's order was not itself intentional. "It may well be that particular conduct is in direct and flagrant disobedience to a court order but the issuing court whose order is violated may nevertheless decide, for whatever reason, that no sanctions ought to be imposed." *United States v. Dickinson,* 465 F.2d 496, 513 (5th Cir.1972). However, the Court is concerned with the State's failure to treat Burdine's case with the seriousness it deserves:

> The law of habeas corpus is subtle and intricate; mistakes are easy to make. But it is a body of law which the lawyers employed by a state attorney general should be masters. Failing to achieve such mastery, they should not blame federal judges for springing dangerous criminals free to prey on the citizenry whose safety the attorney general is sworn to protect.

*Fagan v. Washington,* 942 F.2d 1155, 1157 (7th Cir.1991) (Posner, J.).

Throughout its brief, the State seeks to minimize its failure to comply with established procedural rules as "excusable neglect." However, a similar procedural er-

ror by defense counsel in a capital case could result in a defendant's execution. *See e.g. McCleskey v. Zant,* 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991) (petitioner failed to abide by proper habeas procedural rules and therefore abused writ; petitioner thereafter executed); *Smith v. Murray,* 477 U.S. 527, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986) (petitioner failed to follow proper appellate procedure and claim was therefore procedurally defaulted; petitioner thereafter executed); *Coleman v. Thompson,* 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (petitioner failed to timely file notice of appeal; petitioner thereafter executed).

Equal justice under the law in American jurisprudence mandates that the same principles and rules be applied to a criminal defendant as to the entity of The State. Accordingly, the Court hereby

ORDERS that the Motion for Stay of Judgment Pending Appeal and Motion for Leave to File Untimely Motion for Stay of Judgment Pending Appeal and Alternative Motion for Relief from Judgment filed by respondent Gary Johnson are DENIED. The Court further

ORDERS that the Motion for Immediate Release from Custody filed by petitioner Calvin Jerold Burdine is GRANTED IN PART AND DENIED IN PART. It is therefore

ORDERED that within five days from the date of this order, respondent Gary Johnson, Director, Texas Department of Criminal Justice, Institutional Division, release petitioner Calvin Jerold Burdine from his current unconstitutional custody.

---

**6.** Webster's Third New International Dictionary (Unabridged) 1917 (1986) defines release: "to set free from restraint, confinement, or servitude; set at liberty; let go (ordered all prisoners released)."

Black's Law Dictionary 1292 (7th ed.1999) defines release: "the action of freeing or the fact of being freed from restraint or confinement (he became a model citizen after his release from prison)."