Justin Michael **WOLFE,** Petitioner,

v.

Harold W. **CLARKE,** Director, Virginia Department of Corrections, Respondent.

Civil Action No. 2:05cv432.

United States District Court,
E.D. Virginia,
Norfolk Division.

Nov. 22, 2011.

Michele Jill Brace, Charlottesville, VA, Alan Dial, Washington, DC, for Petitioner.

Matthew P. Dullaghan, Steven Andrew Witmer, Office of the Attorney General, Richmond, VA, for Respondent.

## MEMORANDUM OPINION AND ORDER

RAYMOND A. JACKSON, District Judge.

Before the Court are Respondent's Motion for a Temporary Stay Pending Appeal and Petitioner's Motion for Release Pending Appeal. The motions are fully briefed and the Court held a hearing on both motions on Thursday, November 10, 2011. Thus, these matters are ripe for judicial determination. For the reasons set forth herein, Respondent's Motion for a Temporary Stay Pending Appeal is **GRANTED**, and Petitioner's Motion for Release Pending Appeal is **GRANTED IN PART** and **DENIED IN PART.**

## I. FACTUAL AND PROCEDURAL HISTORY

On January 7, 2002, a Prince William County jury convicted Petitioner, Justin Wolfe, of capital murder (murder-for-hire), use of a firearm in the commission of a felony, and conspiracy to distribute marijuana. As a result of his convictions, Wolfe was sentenced to death on the murder-for-hire charge and prison terms of thirty years and three years, respectively, on the conspiracy and firearm charges. Wolfe filed an appeal in the Supreme Court of Virginia on the capital murder conviction and filed an appeal in the Virginia Court of Appeals on the firearm and drug convictions. The non-death penalty cases were certified to the Supreme Court of Virginia and consolidated. The Supreme Court of Virginia dismissed the petition on March 10, 2005, and the United States Supreme Court denied Wolfe's petition for writ of certiorari on July 8, 2005. On November 7, 2005, Petitioner filed his federal habeas petition under the authority of 28 U.S.C. § 2254 ("§ 2254 claim"). On August 7, 2007, the Magistrate Judge issued a Report and Recommendation declining to conduct an evidentiary hearing and recommending that his petition be dismissed. On February 11, 2008, this Court adopted the Report and Recommendation

and dismissed Wolfe's petition. Wolfe then filed a motion to alter or amend the judgment which this Court denied on May 15, 2008.

On June 18, 2008, Wolfe filed his notice of appeal. On September 12, 2008, the United States Court of Appeals for the Fourth Circuit granted Wolfe a certificate of appealability on his extraneous influence, venireman, *Brady,* and *Giglio* claims. On May 11, 2009, the Fourth Circuit affirmed the district court's rulings on the extraneous influence claim and the venireman-counsel subpart, and vacated this Court's ruling on the *Brady, Giglio,* and venireman-court subpart claims. *Wolfe v. Johnson,* 565 F.3d 140 (4th Cir.2009). Additionally, the Fourth Circuit remanded the case for a determination under *Schlup v. Delo,* 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995), and to decide whether an evidentiary hearing was appropriate. *Id.* On February 4, 2010, this Court issued a Memorandum Opinion and Order finding that Wolfe had satisfied the *Schlup v. Delo* standard to pursue his § 2254 claim. Furthermore, the Court granted Petitioner's Motion for an Evidentiary Hearing on his *Brady* and *Giglio* claims and reserved its ruling on Petitioner's venireman-court claim. This Court conducted a four-day evidentiary hearing on Wolfe's *Brady* and *Giglio* claims beginning on November 2, 2010.

On July 12, 2011, this Court issued a Memorandum Opinion and Order granting Wolfe's habeas petition on three grounds. First, this Court found that Wolfe was deprived of his right to due process pursuant to the Fourteenth Amendment, as interpreted in *Brady v. Maryland,* to be apprised of all material, exculpatory information within the hands of the prosecution. Second, this Court found that the Commonwealth's use of witness Owen Barber's false testimony was grounds for ha-

beas relief under both *Stockton v. Virginia* and *Giglio v. United States.* Third, this Court found that Wolfe was denied his Sixth Amendment right to an impartial jury. Accordingly, the Clerk entered judgment for Wolfe on July 12, 2011. On July 26, 2011, 819 F.Supp.2d 538, 2011 WL 3251494 (E.D.Va.2011) this Court issued an Amended Memorandum Opinion and Order, which made only technical changes to its Order of July 12, 2011 but did not alter any of the Court's rulings. On August 4, 2011, the Director filed a notice of appeal. On Wolfe's motion, this Court amended its judgment of July 12, 2011 on August 30, 2011 to further clarify that it granted habeas relief as to Wolfe's convictions on all charges, since the denial of Wolfe's right to due process permeated his entire state criminal trial. On September 2, 2011, the Director then filed a notice of appeal of this Court's amended judgment.

The Director filed a Motion for a Temporary Stay Pending Appeal on September 13, 2011. Wolfe filed a Motion for Release Pending Appeal on September 21, 2011. Wolfe also filed a notice of cross appeal on September 27, 2011. The two motions have been fully briefed and this Court held a hearing on both motions on Thursday, November 10, 2011.

## II. LEGAL STANDARD

### A. Motion for Stay Pending Appeal

The Director moves this Court to stay its judgment granting Wolfe habeas relief and ordering that the Commonwealth either retry Wolfe within 120 days of the judgment or release him unconditionally. Wolfe opposes a stay of this Court's judgment pending appeal.

The determination whether to permit a stay pending the appeal of a decision granting habeas relief is governed

by the standard set forth in *Hilton v. Braunskill,* 481 U.S. 770, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987). This standard is the same one that federal courts use when assessing whether to grant stays of other civil proceedings, as set forth in Rule 62 of the Federal Rules of Civil Procedure and Rule 8 of the Federal Rules of Appellate Procedure. *Hilton,* 481 U.S. at 776, 107 S.Ct. 2113. In *Hilton,* the Court articulated four factors that the district court should consider in determining whether to grant a stay of a judgment granting habeas relief pending appeal:

(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits;

(2) whether the applicant will be irreparably injured absent a stay;

(3) whether issuance of the stay will substantially injure the other parties interested in the proceedings; and

(4) where the public interest lies.

*Hilton,* 481 U.S. at 776, 107 S.Ct. 2113.

In addition to these traditional stay factors, the Supreme Court directed that the possibility of flight and the petitioner's risk of danger to the public be considered. *Hilton,* 481 U.S. at 777, 107 S.Ct. 2113. The Court also identified as a factor to be considered the state's interest in "continuing custody and rehabilitation" of the petitioner pending final determination of the case on appeal. *Id.* This interest is "strongest where the remaining portion of the sentence to be served is long, and weakest where there is little of the sentence remaining to be served." *Id.* The final factor to be considered is the interest of the habeas petitioner in his release pending appeal, which is "always substantial" and strongest when the preceding factors are weakest. *Id.* at 777–78, 107 S.Ct. 2113. The Court added;

The balance may depend to a large extent upon determination of the State's prospects of success in its appeal. Where the State establishes that it has a strong likelihood of success on appeal, or where, failing that, it can nonetheless demonstrate a substantial case on the merits, continued custody is permissible if the second and fourth factors in the traditional stay analysis militate against release. Where the State's showing on the merits falls below this level, the preference for release should control.

*Id.* at 778, 107 S.Ct. 2113 (internal citations omitted). Finally, the Court stated that "[s]ince traditional stay factors contemplate individualized judgments in each case, the formula cannot be reduced to a set of rigid rules." *Hilton,* 481 U.S. at 777, 107 S.Ct. 2113.

In most cases where the federal district court grants habeas corpus relief in favor of a state prisoner, the state will file a motion to stay the final judgment ordering the state to conditionally or unconditionally release the petitioner. Randy Hertz & James S. Liebman, Federal Habeas Corpus Practice and Procedure, Sixth Edition § 36.4[d] (Matthew Bender). Moreover, the district court or the court of appeals usually will grant a stay of judgment. *Id.* (collecting cases). Indeed, the Supreme Court "has repeatedly stated that federal courts may delay the release of a successful habeas petitioner in order to provide the State an opportunity to correct the constitutional violation found by the court." *Hilton,* 481 U.S. at 775, 107 S.Ct. 2113 (citations omitted).

However, some district courts have declined to grant a stay pending appeal. *See, e.g., Bowen v. Maynard,* 799 F.2d 593, 614 n. 12 (10th Cir.1986) (holding the district court did not abuse its discretion in ordering the immediate release of a successful habeas petitioner convicted of three counts of capital murder and sentenced to death); *Cockerham v. Cain,* 1999 WL

1220760, at *1, 1999 U.S. Dist. LEXIS 19553, at *3–*6 (E.D.La. Dec. 17, 1999) (denying state's motion for a stay pending appeal because the court "does not agree with the state's argument that there is a strong likelihood of success on appeal," the state has failed to show that a stay is needed to prevent irreparable injury, and "there is no suggestion that the petitioner poses a risk of flight or danger to the public"); *Jones v. Jones*, 1998 WL 175895, at *1–*2, 1998 U.S. Dist. LEXIS 5161, at *3–*4 (E.D.La. Apr. 13, 1998) (state's motion for stay of order granting conditional habeas corpus relief is denied because, among other reasons, only one factor in the state's favor, "length of the sentence remaining for the prisoner who was sentenced to a life term," was not sufficient to overcome the "presumption of release" and to justify a stay).

## B. Motion for Release Pending Appeal

Wolfe moves this Court to release him pending the Director's appeal of this Court's judgment granting the writ of habeas corpus on all counts of Wolfe's conviction in state court. Alternatively, Wolfe moves for a transfer to alternative custody other than his current confinement in segregation at Sussex II State Prison, including back to Death Row at Sussex I State Prison, where the Director held him for the vast majority of Wolfe's incarceration. The Director opposes the motion. The legal standard for each of these requests will be discussed in turn.

### 1. Request for Release Pending Appeal

■ "The federal court's authority to release a state prisoner on recognizance or surety in the course of a habeas corpus proceeding derives from the power to issue the writ itself." *Marino v. Vasquez*, 812 F.2d 499, 507 (9th Cir.1987) (citing cases from the First, Second, Third and Fifth circuits holding the same). "The only authority for the release by a federal court of a state prisoner is the habeas corpus statute, 28 U.S.C. §§ 2241–2255." *Id.* at 508. In particular, Rule 23 of the Federal Rules of Appellate Procedure governs the release on bail of state prisoners seeking federal habeas corpus relief. *Id.* at 507–08 ("Decisions of other circuits clearly establish that Rule 23 is the standard which governs a federal court's release on bail of a state prisoner seeking federal habeas corpus relief") (citing cases from the Seventh and District of Columbia circuits holding the same).

■ Thus, although this matter is pending before the Court of Appeals for the Fourth Circuit, this Court retains jurisdiction to release a prisoner pursuant to Rule 23(c) of the Federal Rules of Appellate Procedure. Rule 23(c) provides that, when the Government appeals a decision granting a writ of habeas corpus, the habeas petitioner must be released "unless the court or judge rendering the decision, or the court of appeals, or the Supreme Court, or a judge or justice of either court orders otherwise." [1] Fed. R.App. P. 23(c); *Hilton v. Braunskill*, 481 U.S. 770, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987). Further, Rule 23(d) of the Federal Rules of Appellate Procedure provides that an initial order issued pursuant to Rule 23(c) "continues in effect pending review unless for special reasons shown to the court of appeals or the Supreme Court, or to a judge or justice of either court, the order

---

**1.** Rule 23(c) reads: "Release Pending Review of Decision Ordering Release. While a decision ordering the release of a prisoner is under review, the prisoner must—unless the court or judge rendering the decision, or the court of appeals, or the Supreme Court, or a judge or justice of either court orders otherwise—be released on personal recognizance, with or without surety." Fed. R.App. P. 23(c).

is modified or an independent order regarding custody, release, or surety is issued." Fed. R.App. P. 23(d).

In interpreting Rule 23, the Supreme Court has held: "Rule 23(c) undoubtedly creates a presumption of release from custody in such cases, but that presumption may be overcome if the judge rendering the decision, or an appellate court or judge, 'otherwise orders.'"[2] *Hilton,* 481 U.S. at 774, 107 S.Ct. 2113 (internal citations omitted). The Supreme Court also has held that the factors that courts should consider in determining whether to grant a stay pending appeal, discussed *supra,* may "tip the balance" against this presumption of release. *Hilton,* 481 U.S. at 777, 107 S.Ct. 2113.

▆▆▆ Despite a split of authorities on this point, the greater weight of authority suggests that this presumption in favor of release applies to both unconditional and conditional habeas corpus relief, the latter category into which Wolfe's case falls. *See* Hertz & Liebman, Federal Habeas Corpus Practice and Procedure, Sixth Edition § 36.4[d] ("[I]t seems likely that the Supreme Court intended to expand the new rule [23] to include release pending review of relief orders contemplating retrial as well as unconditional release and that it expanded the amount of discretion with regard to release pending appeal in order to account for the wider range of relief orders encompassed within the rule.") (citing several cases granting release pending appeal of conditional habeas corpus relief). Thus, pursuant to this presumption of release, "[t]he party opposing release must set forth 'special reasons' for the modification of the release." *Burdine v. Johnson,* 87 F.Supp.2d 711, 717 (S.D.Tex.2000) *aff'd,* 262 F.3d 336 (5th Cir.2001) (en banc), *cert. denied,* 535 U.S. 1120, 122 S.Ct. 2347, 153

L.Ed.2d 174 (2002) (citing, *inter alia, Foster v. Lockhart,* 9 F.3d 722, 727 (8th Cir. 1993) and *Workman v. Tate,* 958 F.2d 164, 166–67 (6th Cir.1992)).

Further, the Supreme Court has held that "Rule 23(d) creates a presumption of correctness for the order of a district court entered pursuant to Rule 23(c), whether that order enlarges the petitioner or refuses to enlarge him, but this presumption may be overcome in the appellate court 'for special reasons shown.'" *Hilton,* 481 U.S. at 774, 107 S.Ct. 2113.

### 2. *Request for Transfer to Alternative Custody*

Wolfe requests that, if he is not released pending appeal, he be returned to Death Row in Sussex I State Prison or transferred to alternative confinement. While neither Wolfe nor the Director cites to specific legal authority in support of or in opposition to this request, the Court relies on Rule 23(a) of the Federal Rules of Appellate Procedure for its authority to oversee and inquire into the transfer of a prisoner between facilities pending review of the prisoner's habeas proceeding. Rule 23(a) provides:

> Transfer of Custody Pending Review. Pending review of a decision in a habeas corpus proceeding commenced before a court, justice, or judge of the United States for the release of a prisoner, the person having custody of the prisoner must not transfer custody to another unless a transfer is directed in accordance with this rule. When, upon application, a custodian shows the need for a transfer, the court, justice, or judge rendering the decision under review may

---

**2.** While the wording of Rule 23 has changed slightly since *Hilton v. Braunskill,* the thrust of the rule remains substantively unaltered in the case law.

authorize the transfer and substitute the successor custodian as a party.

Fed. R.App. P. 23(a).

Federal courts have observed that, in the federal system, the Bureau of Prisons may move its prisoners where it wishes as a general matter. *See, e.g., Ajaj v. Smith,* 108 Fed.Appx. 743 (4th Cir.2004) ("To the extent that [prisoner] complained about his transfer to Colorado, the Bureau of Prisons has discretion to determine where and under what conditions a federal prisoner is housed.") (citing *Bell v. Wolfish,* 441 U.S. 520, 539, 540–41 n. 23, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)); *see also Ward v. U.S. Parole Comm'n,* 804 F.2d 64, 65 (7th Cir. 1986) ("Ordinarily the Bureau of Prison may move its charges where it will."). However, where a prisoner has a pending habeas proceeding, Rule 23(a) requires an application for leave from the court prior to transferring "custody to another."

In interpreting Rule 23(a) alongside the Attorney General's statutory grant of discretion to house prisoners where he or she sees fit, the court in *Ward v. U.S. Parole Commission* concluded as follows:

[T]he Rule requires no more than a review of the Attorney General's determination of need—and deferential review at that, limited to protecting the court's ability to adjudicate the pending case effectively. Protecting this authority is the purpose of the Rule. The statement accompanying the application for leave to transfer should demonstrate an administrative reason that is independent of the litigation. That is, the transfer may not be in retaliation for the suit or designed to make it hard for the prisoner to pursue the litigation. But if the statement shows a legitimate reason for the transfer, and the prisoner cannot establish that the transfer would deprive the court of jurisdiction or substantially complicate the conduct of the litigation,

then the application may be granted. This leaves Rule 23(a) a useful function yet preserves the Attorney General's statutory authority.

*Ward,* 804 F.2d at 66. *Ward* proceeded to explain that courts usually review decisions of administrative agencies, such as the Bureau of Prisons, on the administrative record, rather than on the basis of "proofs made to a judge":

Unless the administrative record shows that the action is arbitrary, capricious, or an abuse of discretion, it will be sustained. There is no "administrative record" here, but there is an affidavit supplying reasons.... The Warden's statement, unless perjured, shows that [Petitioner] is being transferred for a legitimate reason—space is needed at [facility # 1], and [facility # 2] is appropriate for [Petitioner's] Level 2 security classification. [Petitioner] does not argue that the transfer will deprive him of access to evidence or inhibit litigation.

*Id.* at 67.

■ Even provided this deference to departments of corrections, courts may inquire into the state's reasons for transferring a habeas petitioner under Rule 23(a). *See, e.g., Friday v. U.S. Dep't of Justice,* 1994 WL 123642, at *2 (D.Or. Apr. 5, 1994) ("In permitting [Petitioner's] transfer under Fed. R.App. Proc. 23, this court necessary [sic] determined that there was a legitimate administrative reason for [Petitioner's] transfer and that the transfer was not retaliatory or 'designed to make it hard for the prisoner to pursue the litigation.' "); *Ward,* 804 F.2d at 66–67 (transfer to low-security facility permissible because space needed for prisoner posing higher security risk); *Arredondo v. Pollard,* 2008 WL 249218, at *1 (E.D.Wis. Jan. 29, 2008) ("Because respondent has produced evidence showing that petitioner was transferred for safety and program-

ming reasons, there is no indication that the transfer was 'arbitrary, capricious, or an abuse of discretion,' " although here, the prisoner did not object to the transfer).

On this point, Hertz and Liebman further note in their authoritative treatise:

> ... [F]ederal courts have inherent authority to preserve or modify a prisoner's custody status during all phases of a habeas corpus proceeding. ... That authority extends, at the least, to issuance by the district court—at *any* time after it concludes that it has personal and subject matter jurisdiction—of an order forbidding transfer to another facility if (1) transfer would threaten the court's jurisdiction or venue or adversely affect the efficiency, fairness, or remedial capacity of the proceedings, and (2) there is no "need therefor."

Hertz & Liebman, Federal Habeas Corpus Practice and Procedure, Sixth Edition § 36.3 n. 6 (internal citations omitted).

Furthermore, Rule 23(a) has been applied to transfers of prisoners in state custody from one state facility to another. *See, e.g., Hammer v. Meachum*, 691 F.2d 958, 961 (10th Cir.1982) (state's transfer of prisoner from one in-state facility to another while prisoner's habeas petition was pending on appeal and where state did not seek leave of federal court to transfer him first was "blatant violation of the appellate rules," although petitioner's motion to be returned to first facility was denied because he was not "prejudiced by the transfer").

## III. DISCUSSION

### A. Motion for Stay Pending Appeal

This Court will decide whether to grant a temporary stay pending appeal of a grant of habeas relief by analyzing the stay factors enumerated in *Hilton v.* *Braunskill*, the same factors that courts traditionally employ in assessing applications for a stay in other types of civil proceedings. *Hilton v. Braunskill*, 481 U.S. 770, 776–77, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987).

### 1. Strong Likelihood of Success on the Merits on Appeal

■ The first *Hilton* factor is whether the applicant for the stay has made "a strong showing that he is likely to succeed on the merits" on appeal. *Hilton*, 481 U.S. at 776, 107 S.Ct. 2113. On this factor, the Court disagrees with the Director's assertion that he has demonstrated a strong likelihood of success on appeal with respect to this Court's orders allowing Wolfe to pursue his habeas claim under 28 U.S.C. § 2254 and then granting Wolfe's habeas petition.

The Director makes the following assertions in support of his argument that he has demonstrated a strong likelihood of success on appeal: 1) this Court's decision that Wolfe showed actual innocence under *Schlup v. Delo* is likely to be reversed; 2) this Court's decision permitting Wolfe to amend his habeas petition is likely to be reversed; 3) this Court's factual findings are likely to be reversed; 4) this Court's holdings that certain information was exculpatory and material are likely to be reversed; 5) this Court's *Giglio* ruling is likely to be reversed; 6) this Court's decision on Wolfe's juror claim is likely to be reversed; 7) this Court's procedural rulings are likely to be reversed; and 8) this Court's decision vacating Wolfe's noncapital convictions is likely to be reversed. *See generally* Mem. Supp. Mot. Temporary Stay Pending Appeal. In sum, the Director essentially challenges all of this Court's substantive and procedural decisions following the Fourth Circuit's remand of Wolfe's case.

However, this Court carefully considered and rejected all of the Director's arguments on this factor in its prior rulings. Further, the Fourth Circuit granted this Court a broad mandate when remanding Wolfe's case for a resolution under *Schlup,* for a determination whether an evidentiary hearing and relevant discovery is appropriate, for a "fresh examination" of Wolfe's *Brady* and *Giglio* claims, and "for such other and further proceedings as may be appropriate." *Wolfe v. Johnson,* 565 F.3d 140, 171 (4th Cir.2009). Accordingly, the Court finds no merit to the Director's argument that this Court exceeded its authority or exhibited clear error in its substantive and procedural rulings following remand of the case. Therefore, on this factor, the Court finds that the Director has not made the requisite showing of a strong likelihood of success on the merits on appeal.

### 2. *Irreparable Injury*

█ The second *Hilton* factor is "whether the applicant will be irreparably injured absent a stay." *Hilton,* 481 U.S. at 776, 107 S.Ct. 2113. On this factor, the Court finds that the Director has made the requisite showing of irreparable injury.

The Director argues that he will suffer irreparable injury in the absence of a stay because his right to pursue an appeal of this Court's judgment would be frustrated by the necessity of needing to either release or retry Wolfe within 120 days, or by December 28, 2011, pursuant to this Court's order of August 30, 2011. Hr'g Tr. 6:24–7:2 (Nov. 10, 2011) ("Hr'g Tr."). During the motions hearing, counsel for the Director indicated that the Court of Appeals for the Fourth Circuit has finalized the briefing schedule for this case. Hr'g Tr. 6:8–22. The Director's opening brief and appendix are due December 14, 2011, and the final brief by the Director will not be due until approximately the first week of March of 2012. Hr'g ·Tr. 6:12–22. The Director argues that the Fourth Circuit's decision in this case would shape any re-prosecution of Wolfe regarding, for example, what evidence may be admitted at a subsequent state criminal trial. Hr'g Tr. 7:16–8:1. The Director further argues that the Commonwealth will be faced with competing requirements if this Court compels the Commonwealth to retry Wolfe before the Commonwealth has clarity from the Fourth Circuit as to its obligations during any retrial. Hr'g Tr. 7:16–8:7.

On the other hand, Wolfe argues that the Director would not suffer irreparable injury in the absence of a stay since the Director always can apply for an extension of the 120–day time limit that this Court has imposed, if the need arises. Pet'r's Mem. Opp'n Mot. Temporary Stay Pending Appeal at 15. The Court agrees with Wolfe, but given the impending deadline of December 28, 2011, the Court believes that granting a stay of its judgment at this point is akin to having the Director seek an extension of time five weeks from now. Thus, given the Fourth Circuit's briefing schedule and the potentially conflicting obligations that the Commonwealth may face from this Court and the Court of Appeals, this Court finds that the Director would be irreparably injured absent a stay.

### 3. *Injury to Other Interested Parties*

█ The third *Hilton* factor is "whether issuance of the stay will substantially injure the other parties interested in the proceedings." *Hilton,* 481 U.S. at 776, 107 S.Ct. 2113. The Court finds that this factor weighs against the Director. However, the injury to third parties, namely Wolfe, also can be mitigated by reverting to the status quo with respect to the conditions of Wolfe's confinement, discussed *infra* in

part III.B. Thus, while the issuance of a stay would injure Wolfe, the Court finds that this injury is not substantial in light of the Court's holding in part III.B *infra.*

The Director acknowledges that the other interested party to this litigation is the Petitioner. Hr'g Tr. 12:15–19. Further, staying this Court's judgment granting Wolfe habeas relief means that Wolfe will remain incarcerated pursuant to convictions that this Court has vacated and that Wolfe will be subjected to the onerous conditions of segregation, absent any relief from this Court. Since being in segregation, Wolfe reports that he has lost thirteen pounds, Hr'g Tr. 34:11, 35:9–10, has experienced a worsening of his dry skin condition because of his lack of access to lotion, Hr'g Tr. 35:16–36:3, and has exhibited symptoms of anxiety, Hr'g Tr. 35:15–16, 40:11–24. Wolfe's mother, Teresa Steinberg, also testified to the negative changes she has observed in Wolfe since he was moved to segregation in September of this year. Hr'g Tr. 59:4–22 (noting Wolfe's weight loss, change in color, increased anxiety, and inability to focus over the past two months).

On the other hand, the Director contends that Wolfe suffers no harm if a stay is granted, irrespective of the specifics of the conditions of Wolfe's confinement, since a stay would maintain the status quo by keeping Wolfe in custody. Hr'g Tr. 8:8–22. While the Court disagrees with the Director's contention that Wolfe suffers no harm if a stay is granted, the Court finds that the harm to Wolfe is reason to revert to the status quo with respect to Wolfe's conditions of confinement, not necessarily to deny the stay altogether, as discussed *infra* in part III.B. Therefore, even though the issuance of a stay would injure Wolfe, the Court finds that this injury is not substantial in light of the Court's holding in part III.B *infra.*

### 4. Public Interest

The fourth *Hilton* factor to assess when determining whether to grant a temporary stay is where the public interest lies. *Hilton,* 481 U.S. at 776, 107 S.Ct. 2113. On this factor, the Court finds that the public interest lies on both sides.

The Director argues that the public interest lies in the Commonwealth exercising its right to appeal and the Fourth Circuit providing its guidance on the issues the Director has raised on appeal. Hr'g Tr. 18:13–23. Wolfe does not disagree with the Director on these points. Hr'g Tr. 25:11–17. However, Wolfe further argues that the public interest weighs in his favor by virtue of the presumption of release under Rule 23 of the Federal Rules of Appellate Procedure where that presumption is not rebutted by the state. Hr'g Tr. 25:18–24. Wolfe also asserts that the public has an interest in maintaining the integrity of the judicial system, namely, in the "appropriate treatment of its prisoners, in the appropriate conduct of its officials, and in the vindication of the innocent." Mem. Supp. Mot. Release Pending Appeal at 19. As a result, counsel for Wolfe asserts that the public interest lies in "vindicating both parties' interests," an objective which he asserts the Court can achieve by fashioning an appropriate resolution accordingly. Hr'g Tr. 25:25–26:19. The Court finds that, while the public has an interest in maintaining the integrity of its judicial system, the Director's right to appeal the judgment of this Court is also a mainstay of that system. Moreover, while Wolfe has a strong interest in his release, the Director has rebutted the presumption of release based on the irreparable injury the Director is likely to suffer in the absence of a stay.

### 5. Additional Hilton Factors

In addition to the four traditional stay factors above, the Supreme Court has stat-

ed that the district court should consider the following factors when determining whether to grant a temporary stay: the possibility of the petitioner's flight in the absence of a stay; the petitioner's risk of danger to the public; the state's interest in continuing custody and rehabilitation of the petitioner; and the interest of the petitioner in his release pending appeal. *Hilton v. Braunskill,* 481 U.S. 770, 776, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987).

With respect to Wolfe's risk of flight, the Court finds that Wolfe does not present a risk of flight if a stay were denied and Wolfe were released from prison. During Wolfe's state criminal trial, Wolfe and the prosecution presented vastly different versions of events regarding the circumstances surrounding the murder of Danny Petrole, for whom Wolfe was convicted of murder-for-hire, and whether Wolfe fled Virginia to evade prosecution. However, irrespective of these differences, the Court gives considerable weight to the testimony of both Wolfe and Ms. Steinberg during the motions hearing that Wolfe would conform with any order of this Court if he were released on bond and that Wolfe has strong ties to the community, including his family and those who have supported him during this appeals process. *See, e.g.,* Hr'g Tr. 46:20–23 (family would provide him employment at home), Hr'g Tr. 55:8–56:5 (family's ability to ensure Wolfe abides by any conditions of any release and family's willingness to secure a bond with home equity line of credit).

 Regarding Wolfe's dangerousness, the Court finds that Wolfe does not present a danger to the public if released. Wolfe has argued that he has had an exemplary record of behavior during the entirety of his incarceration since 2002. The Director counters, arguing that Wolfe has been on death row and as a result, his behavior is not illustrative of how he would conduct himself if he is released. However, the Court may weigh one's conduct in prison to assess dangerousness to the community if released. *See, e.g., Burdine v. Johnson,* 87 F.Supp.2d 711, 717 (S.D.Texas 2000), *aff'd,* 262 F.3d 336 (5th Cir.2001) (en banc), *cert. denied,* 535 U.S. 1120, 122 S.Ct. 2347, 153 L.Ed.2d 174 (2002) ("The State has not made the Court aware of any incidents during [the time the petitioner for release has been incarcerated] that would suggest he is a danger to the community."). The Court finds that Wolfe has made such a showing of good conduct while incarcerated, as his eligibility for the employment he held on Death Row was conditioned on good behavior and he also received consistent, positive feedback in his job performance reviews. *See* Ex. 9. Further, given that this Court found that Wolfe had demonstrated actual innocence of the capital murder charge, the Court does not agree with the Director's assessment of Wolfe's dangerousness with respect to this conviction.

As for the state's interest in the continuing custody and rehabilitation of the petitioner, the *Hilton* Court stated that this factor is "strongest [in favor of the stay applicant] where the remaining portion of the sentence to be served is long, and weakest where there is little of the sentence remaining to be served." *Hilton,* 481 U.S. at 776, 107 S.Ct. 2113. In the instant case, Wolfe has been sentenced to death on the capital murder-for-hire conviction and a term of thirty years on the drug conspiracy conviction. To date, Wolfe has been in prison for nine years, less than one-third of the drug conspiracy charge alone. Thus, this factor weighs in favor of granting a stay, due to the amount of time remaining on at least Wolfe's original drug sentence.

The final stay factor to be considered is the petitioner's interest in his release

pending appeal, an interest which is "always substantial" and strongest when the preceding factors are weakest. *Hilton,* 481 U.S. at 776, 107 S.Ct. 2113. In the instant case, some of the preceding factors weigh in the Director's favor and others weigh in Wolfe's favor. Thus, on balance, this factor is not dispositive on the issue of whether a stay should be granted.

After considering all of the preceding *Hilton* factors, the Court **FINDS** that the balance weighs in favor of granting a temporary stay during the pendency of the Director's appeal. *See Hilton,* 481 U.S. at 775, 107 S.Ct. 2113 (noting the Supreme Court "has repeatedly stated that federal courts may delay the release of a successful habeas petitioner in order to provide the State an opportunity to correct the constitutional violation found by the court"). Therefore, this Court's amended judgment of August 30, 2011, granting Wolfe's petition for habeas relief and vacating all of Wolfe's convictions and sentences in Virginia state court, is hereby **STAYED** during the pendency of the Director's appeal to the Court of Appeals for the Fourth Circuit.

### B. Motion for Release Pending Appeal or for Transfer to Alternative Custody

■ Wolfe moves this Court for release pending appeal or, alternatively, to be transferred out of segregation, where he has been housed since September 7, 2011, and into other appropriate custody. The Director opposes Wolfe's release or transfer pending appeal.

Having stayed this Court's judgment granting Wolfe habeas relief, the Court **DENIES** Wolfe's motion for release pending appeal, as his criminal convictions and sentences remain intact during the pendency of the Director's appeal to the Fourth Circuit. However, this does not

end the matter. Wolfe requested that, if he is not released, he be transferred back to Death Row, or into alternative custody, since he has been subject to more onerous conditions since this Court vacated his convictions and sentences.

As an initial matter, the Court finds that the Director violated Rule 23 of the Federal Rules of Appellate Procedure by not seeking leave from this Court first before transferring Wolfe from Sussex I State Prison to Sussex II State Prison. *See Hammer v. Meachum,* 691 F.2d 958, 961 (10th Cir.1982) (state's transfer of prisoner from one in-state facility to another while prisoner's habeas petition was pending on appeal and where state did not seek leave of federal court to transfer him first was "blatant violation of the appellate rules," although petitioner's motion to be returned to first facility was denied because he was not "prejudiced by the transfer").

Further, the Court finds that Wolfe was prejudiced by this transfer, as he was subject to more onerous conditions, on the whole, in segregation than when he was housed on Death Row at Sussex I State Prison. The Court's foregoing discussion in part III.A, *supra,* regarding the harm to the Petitioner under the stay analysis is relevant here. Both Wolfe and his mother testified to Wolfe's weight loss, a worsened skin condition, and increased anxiety as a result of his transfer to segregation in Sussex II. Further, during the motions hearing, there was testimony regarding Wolfe's loss of certain benefits, including employment within the prison, television and commissary privileges, certain visitation rights, and other benefits since his move to Sussex II State Prison. Hr'g Tr. 36:4–37:22 (employment, additional time outside); 49:2–9 (weekend visitation on Death Row); 87:25–89:1 (loss of commissary and television privileges).

Given that the Director failed to seek leave from this Court prior to transferring Wolfe and because that transfer has caused harm to Wolfe, the Court finds it necessary to examine the Director's reasons for Wolfe's transfer to segregation at Sussex II State Prison. The Director has asserted that Wolfe's transfer from Death Row to Sussex II/segregation was the result of a reclassification, since Wolfe no longer was being held pursuant to a death sentence as a result of this Court's order vacating that sentence. Hr'g Tr. 85:20–24. Additionally, the Director has stated that Wolfe was placed in "administrative segregation" specifically because he had been housed for the entirety of his confinement on Death Row and the Director was unsure how Wolfe would adjust if Wolfe were immediately transferred from Death Row to general population. Mem. Opp'n Mot, Release Pending Appeal at 7. The Director also has asserted that he decided to keep Wolfe in administrative segregation for Wolfe's own safety, since Wolfe's case has gained notoriety and the Director feared that another inmate "wanting to make a name for themselves [sic]" may try to harm Wolfe. Hr'g Tr. 67:17–23. Moreover, the Director has not denied that Wolfe is expected to remain in administrative segregation during the pendency of the appeal to the Fourth Circuit. Hr'g Tr. 8:19–22; Opp'n Mot. Release Pending Appeal at 7.

The Court notes that the Director has offered varying justifications for Wolfe's transfer to Sussex II and the Court finds some inconsistencies with the Director's reasons for the transfer. First, Arnold Robinson, Chief of Corrections Operations for the Virginia Department of Corrections ("VDOC"), testified that contact visits are not permitted on Death Row, while they are more permissible in administrative segregation. Hr'g Tr. 78:24–79:1. This fact is particularly relevant here because the Director has asserted that it was Ms. Steinberg's request for a contact visit with her son that "instigated" Wolfe's reclassification and transfer from Death Row to Sussex II. Mem. Opp'n Mot. Release Pending Appeal at 7. However, as counsel for Wolfe pointed out during the motions hearing, the VDOC Operating Procedure indicates that VDOC's procedures are the opposite of Mr. Robinson's testimony. *See* Ex. 4; Hr'g Tr. 79:2–80:13 (Mr. Robinson's testimony relating to Exhibit 4). Specifically, the regulations indicate that inmates housed in administrative segregation "shall be limited to non-contact visits, except for contact visits with an attorney at the request of an attorney." Ex. 4 at 10. By contrast, the regulations state that inmates housed on death row "shall be limited to non-contact visits, except for: i) Contact visits with an attorney at the request of an attorney; ii) Contact visits allowed to immediate family members by the Facility Unit Head. . . ." *Id.* Accordingly, the regulations on their face indicate that contact visits are permissible on Death Row, rather than in administrative segregation.

Additionally, the Court cannot reconcile how the Director would ascertain Wolfe's "adjustment" to the general population if he is now in segregation and interacts with *less*, rather than more, inmates than when he was on Death Row. *See* Hr'g Tr. 52:25–53:12 (detailing that Wolfe was outside his cell more often and interacted with other inmates more often on Death Row than in administrative segregation). The assessments of Wolfe's conduct and work ethic in performing his janitorial duties while on Death Row also were satisfactory to above average, thereby signaling his good conduct while on Death Row. *See* Ex. 9. Thus, the Court is unable to reconcile the Director's proffered justification of his need to gauge Wolfe's adjustment to general population as a reason for Wolfe

being housed in administrative segregation.

Further, while Mr. Robinson was unable to confirm this information, the record reflects that another inmate in the Director's custody, Joshua Andrews, likely had his death sentence vacated but remained on Death Row in Sussex I. Hr'g Tr. 81:3–14. Mr. Robinson also testified that there is no regulation or policy requiring that an inmate be transferred off of Death Row if his death sentence is vacated. Hr'g Tr. 86:8–18. To the contrary, Wolfe contends that transferring an inmate under these circumstances is unprecedented and unusual. Mot. Release Pending Appeal at 2.

Therefore, based upon this record, the Court finds that Wolfe's transfer to segregation at Sussex II State Prison adversely affects the remedial nature of these habeas proceedings and the Director has failed to show that his proffered reasons for the transfer should be entitled to deference, given the inconsistent rationales and the uncontroverted evidence of the transfers effects on Wolfe. Even if the Director's intent was not to penalize the Petitioner, as he contends, the effect of Wolfe's transfer to Sussex II has been just that—punitive. The Court deems questionable the fact that the Director transferred Wolfe to segregation within days of this Court's judgment vacating all of Wolfe's convictions and sentences. Even if the Court were to give the Director the benefit of the doubt, at best, the Director's proffered justifications for Wolfe's transfer are inconsistent and the result has been that Wolfe is in a worse position in segregation at Sussex II than when he was on Death Row at Sussex I.

Accordingly, it is hereby **ORDERED** that the Director transfer Wolfe back to Death Row at Sussex I State Prison within ten (10) days of the date of this Order. It is further **ORDERED** that Wolfe be re-stored to all of his conditions of confinement in existence prior to his transfer to Sussex II State Prison, including, but not limited to, his employment in the housekeeping unit at his prior pay grade, all commissary and television privileges, all visitation privileges, and all other conditions of his confinement prior to his transfer. Further, pursuant to Rule 23(a) of the Federal Rules of Appellate Procedure, the Director shall seek leave from this Court prior to transferring Wolfe to an alternative facility or otherwise materially altering the conditions of his confinement until the conclusion of this matter on appeal.

## IV. CONCLUSION

For the foregoing reasons, Respondent's Motion for a Temporary Stay Pending Appeal is **GRANTED,** and Petitioner's Motion for Release Pending Appeal is **GRANTED IN PART** and **DENIED IN PART.**

**IT IS ORDERED** that this Court's amended judgment of August 30, 2011, granting Wolfe's petition for habeas relief and vacating all of Wolfe's convictions and sentences in Virginia state court, is hereby **STAYED** during the pendency of the Director's appeal to the Court of Appeals for the Fourth Circuit.

Wolfe's motion for release pending appeal is **DENIED IN PART.**

**IT IS FURTHER ORDERED** that the Director transfer Wolfe back to Death Row at Sussex I State Prison within ten (10) days of the date of this Order and to restore all prior conditions of his confinement, including, but not limited to, his employment in the housekeeping unit at his prior pay grade, all commissary and television privileges, all visitation privileges, and all other conditions of his con-

finement which existed when Wolfe was housed on Death Row.

**IT IS FURTHER ORDERED** that, pursuant to Rule 23(a) of the Federal Rules of Appellate Procedure, the Director shall seek leave from this Court prior to transferring Wolfe to an alternative facility or otherwise materially altering the conditions of his confinement until the conclusion of this matter on appeal.

Further, Wolfe's pending motions to file a surreply to the Director's Reply to Petitioner's Opposition to a Temporary Stay Pending Appeal (Dkt. No. 236) and to supplement an exhibit to the proposed surreply (Dkt. No. 237) are hereby moot as a result of this Court's Order.

**IT IS SO ORDERED.**